UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-2790-B |
| | § | |
| VIVA EL GALLO INC. d/b/a/ VIVA EL | § | |
| GALLO, and JOE L. RODRIGUEZ, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff G&G Closed Circuit Events, LLC ("G&G")'s Motion for

Default Judgment (Doc. 10). For the reasons provided below, the Motion is **GRANTED IN PART**.

A final judgment will follow.

## I.

## BACKGROUND

This is an anti-piracy case brought under the Federal Communications Act ("FCA"). G&G

markets and licenses closed-circuit, pay-per-view prizefighting events to commercial establishments.

*See* Doc. 1, Compl. ¶¶ 6-7. To prevent unlicensed establishments from exhibiting G&G's licensed

events, satellite transmissions of those events are electronically coded or "scrambled." *See id.* ¶ 9.

Commercial establishments who, for a fee, purchase sublicense rights from G&G are then provided

with electronic decoding capability or satellite coordinates necessary to receive the transmission. *Id.*

¶¶ 8, 11. Relevant here, G&G purchased and retained exclusive commercial exhibition rights to the

November 27, 2021, "Teofimo Lopez v. George Kambosos, Jr." boxing match, including all undercard bouts and the main prizefight (the "Program"). *Id.* ¶ 6.

Viva El Gallo, Inc. ("Viva") runs a sports bar in Dallas, Texas (the "Bar"). *See id.* ¶ 2. On November 27, 2021, Viva broadcast the Program live in the bar for its patrons. *Id.* ¶¶ 12, 14. However, Viva did not have commercial sublicense rights to do so, as it never purchased those rights from G&G—the Program's exclusive licensor. *Id.* ¶¶ 10, 12. Without a sublicense, Viva could only have obtained access to the Program by unauthorized satellite transmission or receipt over a cable system. *See id.* ¶¶ 10-12.

On November 5, 2024, G&G filed its Complaint, alleging that Viva and its owner/manager, Joe L. Rodriguez (referred to collectively as "Defendants") willfully violated the FCA for commercial gain. *Id.* ¶ 17. G&G asks for statutory damages under the FCA, costs, and attorney's fees, along with pre- and post-judgment interest. *Id.* at 5. G&G served Viva and Rodriguez on December 2, 2024. Doc. 5, Proof Service, 1; Doc. 6, Proof Service, 1. Each Defendant has failed to answer or otherwise respond to the Complaint. G&G requested an entry of default, which the Clerk of Court entered in late January 2025. *See* Doc. 8, Entry Default. Then in June 2025, G&G moved for default judgment. *See generally* Doc. 10, Mot. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, upon motion of the plaintiff, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend. FED. R. CIV. P. 55(a), (b)(2). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun*

*Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes and citations omitted). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (citation omitted). Instead, "default judgment is committed to the discretion of the district court." *Chevron Intell. Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *2 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (Boyle, J.) (citation omitted). First, courts consider whether the entry of a default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). "Third, courts determine what form of relief, if any, the plaintiff should receive." *Morelia Mexican*, 126 F. Supp. 3d at 813 (citation omitted).

### III.

### ANALYSIS

The Court concludes that a default judgment is both procedurally warranted and supported by a sufficient factual basis in the Complaint. Accordingly, G&G is entitled to a default judgment against all Defendants for the alleged FCA violation in the sum-certain amount of $5,400 for statutory and enhanced damages, plus $1,800 in attorney's fees and costs.

A.      *An Entry of Default Judgment Is Procedurally Warranted.*

To determine whether default judgment is procedurally warranted, the Court considers a list of factors set forth by the Fifth Circuit, known as the *Lindsey* factors:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893 (citation omitted).

After applying the six *Lindsey* factors to G&G's Motion, the Court determines that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings, so there are no material facts in dispute. *See id.*; *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ."). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [G&G's] interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C–10–390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893) (other citation omitted). Third, the grounds for default are clearly established because Defendants have had over 14 months to respond to the Complaint and more than seven months to respond to the present Motion, or else to explain why they have not done so. *Cf. Ann Best Elite Temporaries, Inc. v. KNR Grp., Inc.*, 216 F.3d 1080 (5th Cir. 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, G&G seeks only the relief the law provides, and "the Court is aware of no applicable defense." *See John Perez Graphics & Design, LLC v. Green Tree Inv.*

*Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.) (citation omitted). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *See Lindsey*, 161 F.3d at 893 (quoting FED. R. CIV. P. 55(c)). Therefore, the Court concludes that default judgment is procedurally proper.

B.    *There is a Sufficient Basis for Judgment in the Pleadings.*

Next, the Court reviews the pleadings to determine whether G&G can establish a viable claim for relief. *See Nishimatsu Constr.*, 515 F.2d at 1206. Due to their default, Defendants admit all well-pleaded facts in the plaintiff's complaint. *See id.* But a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

In conducting this portion of the analysis, "the Fifth Circuit looks to the [Federal Rule of Civil Procedure 8] case law for guidance." *Morales v. Rausch Grp. & Assocs., LLC*, No. 3:19-CV-2850-B, 2020 WL 6583023, at *3 (N.D. Tex. Nov. 10, 2020) (Boyle, J.) (citation omitted). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). "The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation and internal quotation marks omitted). But "the pleading must present 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

G&G alleges that Defendants violated 47 U.S.C. § 605, or alternatively 47 U.S.C. § 553, of the FCA. Doc. 1, Compl. ¶ 17. G&G moves for judgment only on its § 605 claim. *See* Doc. 10, Mot. ¶ 11. A person violates § 605 when he "intercept[s] any radio communication . . . or receive[s]

or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." § 605(a). Said otherwise, § 605 "prohibits the unauthorized interception or receipt of . . . satellite communications." *See Joe Hand Promotions, Inc. v. Ambiente Bar LLC*, No. 7:13-CV-132, 2014 WL 580767, at *2 (S.D. Tex. Feb. 13, 2014).

In the context of a commercial establishment exhibiting an unauthorized sporting event, a plaintiff can establish a violation of § 605 by showing that (1) the event was shown in the defendant's establishment, (2) the event was shown without authorization, and (3) the plaintiff was the exclusive licensee. *G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, No. 6:12-3052, 2014 WL 198159, at *3 (W.D. La. Jan. 14, 2014) (citations omitted). Section 605 also "prohibit[s] assisting third parties in intercepting or receiving unauthorized communications," and thereby allows plaintiffs to hold related individuals liable if the individual "had (1) the right and ability to supervise the unauthorized activities of the establishment and (2) an obvious and direct financial interest in those activities." *Ambiente Bar*, 2014 WL 580767, at *2 (citations omitted).

G&G alleges that Defendants showed the Program at the Bar. Doc. 1, Compl. ¶¶ 12-15. Defendants did so for commercial purposes—namely to attract patrons to the Bar. *See id.* ¶ 13-15. G&G further alleges that Defendants lacked authorization to exhibit the Program for commercial use, *id.* ¶¶ 12-13, 16, and that G&G had an exclusive license to commercially broadcast the Program in Texas, *id.* ¶¶ 6-7. Lastly, G&G alleges that Rodriguez was the "owner and/or manager" of the Bar, and the "officer and/or owner" of Viva, on the date of the fight. *Id.* ¶ 3. Rodriguez "had a right and ability to supervise the [Bar's] activities" and "had an obvious and direct financial interest" in

the Bar's activities. *Id.* As Defendants failed to respond to the Complaint, the Court holds these facts as undisputed. *See Nishimatsu Constr.*, 515 F.2d at 1206.

Because the above undisputed facts establish that Defendants broadcasted the Program at the Bar without authorization and that G&G had an exclusive license to the Program, G&G provides a sufficient basis for judgment on its § 605 claim. *See Rivals Sports Grill*, 2014 WL 198159, at *3. G&G also provides a basis for the individual liability of Rodriguez, as the Complaint establishes that he could supervise the unauthorized broadcast and had a direct financial interest in the Bar's activities. *See Ambiente Bar*, 2014 WL 580767, at *2.

C.    *The Court Awards $5,400 in Damages Plus Attorney's Fees and Costs.*

Having found sufficient basis for default judgment, the Court must consider any damages to which G&G is entitled. Normally, courts should not award damages without a hearing, unless detailed affidavits establish the necessary facts. *Morelia Mexican*, 126 F. Supp. 3d at 814 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). But a hearing is unnecessary if the court can determine the amount of damages with mathematical calculation, by referencing the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citations omitted). Because G&G's requested statutory damages, enhanced damages, and costs can be determined with certainty, the Court finds that no hearing is required and awards $1,350 in statutory damages, $4,050 in enhanced damages, and $1,800 in attorney's fees and costs for Defendants' violation of § 605. The Court also awards pre- and post-judgment interest.

1.    <u>Statutory and Enhanced Damages</u>

A party "aggrieved by" a violation of § 605 may elect to receive either actual damages or statutory damages. *See* § 605(e)(3)(C)(i). Statutory damages for each violation of the section must be

awarded in an amount no less than $1,000 and no more than $10,000, as the Court finds just. § 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, at its discretion, increase the damage awarded by an amount of not more than $100,000 per violation. § 605(e)(3)(C)(ii).

       *i.   Statutory Damages*

G&G requests statutory, rather than actual, damages, asking for $10,000—the statutory maximum. Doc. 10, Mot. ¶¶ 16-20. G&G argues it is entitled to compensation because, as a result of Defendants' actions, it lost revenue, was denied the "'value, benefits and profits derived' from the unauthorized broadcast" of the Program and lost out on "the value of [the] 'business investment, business opportunities and goodwill'" it might have otherwise enjoyed. *Id.* ¶ 17 (quoting *Am. Television & Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986)).

To support these assertions, G&G presents a declaration from Thomas P. Riley, an attorney hired by G&G to assist with the discovery, investigation, and prosecution of theft or piracy of closed-circuit television programming. *See* Doc. 10-1, App. Ex. A, Decl. Riley ¶¶ 1-2. Riley contends that Defendants' actions, and similar actions by others, erode G&G's customer base because those customers—who purchase sublicenses—are financially unable to compete with commercial establishments that unlawfully exhibit the same programs at no cost. *See id.* ¶ 11. Because licensing fees are G&G's exclusive revenue source, this severely damages G&G's existing revenue stream and threatens G&G's continued viability as a business. *See id.* ¶¶ 11-14.

In assessing statutory damages under § 605, courts consider various factors, including the number of patrons in the establishment at the time of the violation and the licensing fee. *Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No. 3:16-cv-1889-M, 2017 WL 373478, at

*3 (N.D. Tex. Jan. 26, 2017) (Lynn, C.J.) (citations omitted). G&G's private investigator, who was present at the Bar when Defendants exhibited the Program, took three headcounts of patrons throughout the evening. Doc. 10-1, App. Ex. A-2, Aff. Person, 2. He counted five patrons each time. *See id.* He also approximated that the Bar had a 45-person capacity. *Id.* G&G charged a $450 sublicensing fee for commercial establishments with a capacity of 100 or less to exhibit the Program. *See* Doc. 10-1, App. Ex. A-3. Thus, Defendants' would-have-been sublicensing fee for the Program was likely $450.

However, "to adequately deter piracy, the cost of piracy must be significantly higher than the cost of buying a license." *2 Tacos Bar*, 2017 WL 373478, at *3 (citation modified) (quoting *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013)). Thus courts "normally treble[ ] the broadcasting fee to account for 'money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight.'" *Joe Hand Promotions, Inc. v. Cuellar*, No. 4:24-CV-00756-O, 2025 WL 361461, at *5 (N.D. Tex. Jan. 15, 2025) (Ray, Mag. J.) (quoting *J&J Sports Prods., Inc. v. Rivera*, No. EP-14-cv-00343-KC, 2015 WL 1137473, at *4 (W.D. Tex. Mar. 12, 2015)), *report and recommendation adopted*, 2025 WL 360911 (N.D. Tex. Jan. 31, 2025) (O'Connor, J.). The unpaid broadcast fee, trebled, would result in $1,350. The Court thus finds it reasonable to award $1,350 in base statutory damages.

    ii.    *Enhanced Damages*

G&G requests an additional $50,000 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), based on its allegation that Defendants acted willfully and for commercial advantage or financial gain. *See* Doc. 10, Mot. ¶ 22. G&G argues the violation was willful because

Defendants could not have "innocently" accessed the Program broadcast given how complex it is to intercept a transmission. *See id.* Courts have found this reasoning persuasive, as there are limited means by which a person can access closed-circuit, pay-per-view events and it would be unlikely for an establishment to intercept such broadcasts by chance. *See, e.g., J. & J. Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10-CV-02006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) (Lindsay, J.); *Ent. by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002).

Further, the record indicates that Defendants exhibited the Program for either direct or indirect commercial gain, as there were approximately five patrons in the bar at any given time while the Program was aired. *See* Doc. 10-1, App. Ex. A-2, Aff. Person, 2. While the Bar apparently did not charge patrons for admission, it presented the Program while serving beverages to its customers. *See id.* at 1. Other courts have found a willful, commercial motive on these grounds. *See, e.g., Beck*, 2013 WL 5592333, at *3. Thus, there is sufficient evidence to establish that Defendants acted willfully and with a commercial motive.

Because Defendants acted willfully, the Court may increase G&G's award of statutory damages up to $100,000. *See* § 605(e)(3)(C)(ii). Courts generally enhance damages by applying a multiplier between three and five times to the amount awarded in statutory damages. *Joe Hand Promotions, Inc. v. Mickey's Sports Bar & Grill, LLC*, No. 3:17-CV-1312-S (BK), 2018 WL 3039256, at *4 (N.D. Tex. May 8, 2018) (Toliver, Mag. J.) (citations omitted), *report and recommendation adopted*, 2018 WL 3038510 (N.D. Tex. June 19, 2018) (Scholer, J.). To determine the multiplier, courts consider the egregiousness of the conduct. *See id.* Egregiousness depends on factors including whether defendants advertised the event, whether they charged a cover, the number of repeat offenses, and number of patrons. *See, e.g., id.* (applying a 3X multiplier where defendant did not

-10-

charge cover, did not advertise, was not a repeat offender, and played the event to about 15 patrons); *see also Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014) (Boyle, J.) (applying a 4X multiplier where defendant charged $5 cover, played the event on nine screens, and had approximately 85-125 patrons); *Beck*, 2013 WL 5592333, at *3 (awarding 3X multiplier where defendant did not charge cover, only 30 patrons viewed the event, and defendant was not a repeat violator).

On the night in question, Defendants exhibited the Program on at least seven separate television sets. Doc. 10-1, App. Ex. A-2, Aff. Person, 1. Nothing indicates that Defendants charged patrons a cover fee. *See id.* (indicating that no cover charge was required to enter the Bar). However, Defendants did sell drinks during the broadcast of the match. *See id.* (Bar staff served G&G's investigator a drink). While those factors weigh in favor of a higher multiplier, Defendants' efforts to exhibit the program appear to have had a minimal impact on the broader market, with more televisions at the Bar than patrons. *See id.* at 1-2 (G&G's investigator counted five patrons and seven televisions).

Because the Court finds that Defendants willfully exhibited the Program for a commercial motive, but that it had a minimal impact, the Court applies an enhanced damages award of three times (3X) G&G's statutory damages. The Court therefore awards G&G enhanced damages in the amount of $4,050.

2.   <u>The Court Awards $1,800 in Attorney's Fees.</u>

G&G requests attorney's fees totaling either "one-third" of G&G's damages award or—if the Court declines to award fees on a contingency basis—"based on the hourly time presented." Doc. 10, Mot. ¶ 29; *see* Doc. 10-1, App. Ex. B., Decl. Diaz ¶ 7.

Under the FCA, the Court is required to order the recovery of full costs, including reasonable attorney's fees, to an aggrieved party who prevails. § 605(e)(3)(B)(iii). Federal courts in Texas have awarded FCA-provided attorney's fees under both the contingency and loadstar methods. *See J & J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. A-13-CA-824-SS, 2014 WL 1092177, at *3 (W.D. Tex. Mar. 19, 2014). If a plaintiff requests a contingency award, there is some support for a one-third percentage of recovery in FCA cases. *See id.* ("An award equal to one-third of the recovery . . . is reasonable for cases such as this, and is frequently the measure of attorney's fees used in Communications Act cases by federal courts in Texas."); *J&J Sports Productions, Inc. v. Hernandez*, No. 7:19-CV-00327, 2020 WL 2030026, at *5 (S.D. Tex. Apr. 28, 2020) ("This Court has routinely granted one-third of the recovery as attorneys' fees.").

While Courts have sometimes found a percentage basis fee award to be unreasonable, this is typically in cases where the contingency fee is substantially higher than the fees that would result from the loadstar method. *See, e.g., J&J Sports Prods., Inc. v. Circle R & R, Inc.*, No. 4:18-CV-1359, 2019 WL 937348, at *6 (S.D. Tex. Feb. 11, 2019) (finding contingency award equivalent to six times the loadstar amount to be "excessive"), *report and recommendation adopted*, 2019 WL 936522 (S.D. Tex. Feb. 26, 2019).

The Court awarded G&G $5,400 in statutory and enhanced damages. *See supra* III.C.1. Thus, a contingency award of one-third G&G's recovery would result in $1,800 in attorney's fees.

Because this same contingency rate has been approved in other Courts and is not higher than G&G's proffered loadstar-based award,[1] the Court finds the rate to be reasonable and grants G&G $1,800 in attorney's fees. The Court declines to make a contingent award for post-judgment or appellate attorney's fees but will entertain such a request if it becomes necessary in the future.

While G&G also requests costs, *see* Doc. 10, Mot. ¶ 30, it does not identify or produce evidence of any particular costs or expenses. Thus, the Court declines to award costs at this time.

### 3.  Pre-Judgment Interest

"A district court may award prejudgment interest if: 1) the federal act creating the cause of action does not preclude prejudgment interest; and 2) the award of prejudgment interest furthers the congressional policies underlying the act." *Roig v. Ltd. Long Term Disability Program*, 275 F.3d 45 (5th Cir. 2001) (per curiam) (citing *Carpenters Dist. Council of New Orleans v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir. 1994)). "There is a strong presumption in favor of awarding prejudgment interest," *United States v. Ocean Bulk Ships, Inc.*, 248 F.3d 331, 344 (5th Cir. 2001), and "a prevailing plaintiff's request for an equitable award of prejudgment interest should be granted 'in all but exceptional circumstances.'" *Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, No. 3:05-CV-2097-B, 2007 WL 4245493, at *1 (N.D. Tex. Nov. 30, 2007) (Boyle, J.) (quoting *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996)). The FCA is silent on prejudgment interest. However, the Court finds that an award of prejudgment interest would further Congress's goals to deter piracy.

When a federal law is silent on the issue of pre-judgment interest, state law is an appropriate source for guidance. *See United States ex rel. Canion v. Randall & Blake,* 817 F.2d 1188, 1193 (5th Cir.

---

[1] *See* Doc. 10-1, App. Ex. B., Decl. Diaz ¶ 8 (estimating $2,400 loadstar-based award).

1987). In Texas, the pre-judgment interest rate is the same as that for post-judgment interest. Tex. Fin. Code § 304.003. Pre-judgment interest starts accruing on the earlier of: (1) 180 days after the date the defendant received written notice of a claim; or (2) the date suit is filed. See Tex. Fin. Code § 304.104; *see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998). Accordingly, the Court awards pre-judgment interest at the post-judgment rate—a rate that will be fixed when the Court enters final judgment. G&G's pre-judgment interest started accruing on November 5, 2024, computed as simple interest, and will continue to accrue until the day before the Court enters final judgment.

4. Post-Judgment Interest

G&G also requests post-judgment interest. *See* Doc. 10, Mot. ¶ 30. The Court need not enter a specific order granting FFS's request for post-judgment interest, as it is mandated by statute and awarded as a matter of course. M*eaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) ("Post-judgment interest is awarded as a matter of course."); *see* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). The post-judgment interest will be fixed in accordance with § 1961(a) on the date the Court enters judgment.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** G&G's Motion for Default Judgment (Doc. 10). The Court:

- **GRANTS** G&G's request for statutory damages in the amount of $1,350 and enhanced damages in the amount of $4,050, for a total award of $5,400;

- **GRANTS** G&G's request for attorney's fees in the amount of $1,800;

-14-

• **DENIES** G&G's request for costs; and

• **GRANTS** G&G's request for pre- and post-judgment interest at a rate to be fixed at final judgment.

A final judgment will follow.

**SO ORDERED.**

**SIGNED: March 2, 2026.**

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE